HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS E. PARKER, JR., QUI TAM PLAINTIFF for and on behalf of the United States of America and the State of Washington,

Plaintiff,

v.

SEA-MAR COMMUNITY HEALTH CENTER, a Washington Public Benefit Corporation,

Defendant.

CASE NO. C18-5395RBL

ORDER ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

THIS MATTER is before the Court on Defendant's Motion to Dismiss Second Amended Complaint [Dkt. #40]. The Court has reviewed the materials for and against the motion; oral argument is unnecessary. For the following reasons, the motion is **GRANTED** and the claims in Parker's Second Amended Complaint are **DISMISSED** without prejudice to allow him to try one last time to plead facts (who, what, when, where and how) supporting the general conclusions alleged in prior versions of his Complaint.

## I. FACTS

### A. Sea Mar is a Federally Qualified Health Center (FQHC)

Sea Mar is a FQHC authorized under federal law. FQHCs provide Medicaid beneficiaries a managed care option instead of a traditional fee-for-service method which pays a set fee for individual identified medical/dental services.

FQHCs in Washington State must be primarily engaged in providing outpatient health services. FQHCs in general are "safety net" providers and Sea Mar primarily serves Medicaid beneficiaries. Sea Mar provides medical care, dental services and behavioral health services. It also provides other healthcare services, as well as housing. Sea Mar is one of Western Washington's largest providers of Community Health and Human Services, including primary medical and dental care, laboratory and radiological services and outpatient and inpatient behavioral health. Sea Mar serves thousands of Medicaid beneficiaries each year. Sea Mar's network of healthcare service providers consists of more than 90 medical, dental, and behavioral health clinics in 13 Washington Counties.

Sea Mar provides dental care to Medicaid beneficiaries, but not to Medicare beneficiaries. Sea Mar provides behavioral health and other medical services to both Medicaid and Medicare beneficiaries. Sea Mar's Medicaid-related claims are paid by the State of Washington after submission to Washington's Health Care Authority (HCA). Sea Mar submits Medicare claims to Center for Medicare and Medicaid Services (CMS) for reimbursement.

For most dental services, FQHCs are subject to a prospective payment system which categorizes most dental and healthcare visits to a FQHC as an "encounter," subject to a single, set, encounter fee for most health care services provided to a client on a single day.

*Qui Tam* Plaintiff Parker alleges that Sea Mar "is filing false claims" in violation of the False Claims Act (FCA). He alleges that Sea Mar's Medicaid billings for dental care and

behavioral-health treatments are false because Sea Mar creates the appearance that care provided by dental hygienists and medical assistants was actually delivered by dentists or physician assistants, respectively, and that Sea Mar creates this false appearance by improperly billing for such services under dentists' or physician assistants' National Provider Identified (NPI) numbers and taxonomy codes. Parker also alleges that Sea Mar is improperly "unbundling" dental hygienists' services from dentists' services to generate more encounter fees—the flat fee established by the state Medicaid program that FQHCs can charge for qualifying services—in a practice he claims falls below the "standard of care" for dental services provided in Washington. Finally, Parker alleges that Sea Mar conspired to violate the FCA.

Parker's fraud claims rely on a single instance when his granddaughter allegedly received care from a dental hygienist, without seeing a dentist the same day. But he offers no details and no other examples—notably, nothing related to behavioral health treatments—to support his claims. His other assertions are not facts, but conclusions, based upon anecdotal conversations with co-workers or former co-workers.

**B. Regulatory Rules**

1. Medicaid, Washington's State Plan, and FQHCs

The Medicaid program is a cooperative program financed jointly by the federal and state governments and administered solely by state governments. *See* 42 C.F.R. § 430.0. Under the federal rules, each state decides who is eligible to participate, the types and range of services that will be covered, payment levels and amounts for services, and administrative and operating procedures. *Id.* States directly reimburse participating providers for services rendered to eligible Medicaid beneficiaries. *Id.*

To participate in the Medicaid program, a state government must establish a "State Plan," which must be approved by CMS. A State Plan describes the nature and scope of the state's

Medicaid program, assure that the program will be administered in conformance with federal requirements, and designates a single state agency to administer and supervise the program. *See* 42 C.F.R. § 430.10, 42 U.S.C. § 1396(a)(5). The Washington State Plan designates Washington's HCA as its single state agency.

2. Payments for FQHC Services

Federal Medicaid law requires that State Plans reimburse FQHCs for providing qualified services according to a federally-defined Prospective Payment System. *See* 42 U.S.C. § 1396a(bb)(2)-(3). Washington compensates FQHCs for services provided on an "encounter-based" reimbursement structure, determined by a facility's "encounter rate":

> The FQHC reimbursement structure is encounter-based. Facility specific encounter rates are established for each FQHC and are paid for services eligible for an encounter payment. Services not eligible for an encounter payment are paid at the appropriate fee schedule amount.

In other words, each FQHC has a pre-determined encounter rate that is paid for delivery of qualified services; other services are reimbursed based on a fee schedule.

HCA regularly updates and publishes the facility-specific encounter rates on its website. The encounter rate for each of Sea Mar's locations is broken out by permitted cost centers. The encounter rate is a flat rate—it does not vary by type of dental procedure or by dental provider. Accordingly, whether the encounter-eligible service is a short routine cleaning or a lengthy service, under the Washington State Plan and the promulgated billing guidelines, Sea Mar is paid the same amount.

3. Encounters Explicitly Include Services Delivered by Dental Hygienists Under General Supervision of a Dentist

HCA broadly defines a dental encounter as "***a face-to-face encounter between*** a dentist, ***dental hygienist***, or orthodontist and a client for the purpose of prevention, assessment, or treatment of a dental problem, including restoration." April 2017 FQHC Billing

Guide, at 30 (emphasis added).

Washington law contemplates that dental hygienists will perform certain services under either the "general supervision" or "close supervision" of a dentist. *See* WAC 246-817-550 (listing services that dental hygienist may perform under a dentist's "general supervision"); WAC 246-817-560 (listing services that a dental hygienist may perform under a dentist's "close supervision"). "General supervision" "does not require that the dentist be physically present in the treatment facility." *See* WAC 246-817-510(5). These services may also be performed by the dentist personally; these regulations merely permit the dentist to delegate these tasks to a dental hygienist (under supervision) at the dentist's discretion. *See* RCW 18.32.020 (defining practice of dentistry); WAC 246-817-550 ("A dentist ***may allow*** a dental hygienist . . . to perform the following acts …") (emphasis added); WAC 246-817-560.

Generally, "[t]he [HCA] limits encounters to one per client, per day." April 2017 FQHC Billing Guide, at 33. So, where a dental hygienist provides treatment under the dentist's supervision, only one encounter may be billed because "[a] dental hygienist may bill an encounter only when providing a service independently—not jointly with a dentist." *Id.* at 30.

4. Billing

When seeking reimbursement for services rendered, FQHCs must submit several codes, including: the procedure, the code for Place of Service, the provider NPS number and service-specific taxonomy code for the Rendering Providers and the billing NPI and FQHC taxonomy code for the Billing Provider. April 2017 FQHC Billing Guide, at 61-62, 65-68.

Each provider has an NPI number through CMS. Each provider enrolled with HCA is also associated with one or more taxonomy codes, which "indicates provider type, specialty, and subspecialty." The service on a billed claim must be associated with the taxonomy and be within the scope of licensure for the provider supplying or performing the service. For example, dental

services required a dental taxonomy, etc. When billing for services eligible for an encounter payment, [HCA] requires FQHCs to use billing taxonomy 261QF0400X at the claim level." April 2017 FQHC Billing Guide, at 66. Additionally, an encounter-eligible service must be billed in combination with the T1015 procedure code. *Id.* at 60-61.

Nothing in the applicable billing guides, the statute, or related regulations say anything about what NPI and taxonomy codes should be submitted when a dental hygienist provides the treatment at the dentist's supervision, except, as explained above, a "dental hygienist may bill an encounter only when providing a service independently—not jointly with a dentist." *Id.* at 30. In other words. a dental hygienist may not bill an encounter when delivering an encounter-eligible service that the hygienist performs under the general or close supervision of a dentist; such an encounter should be billed instead under the supervising dentist's NPI number. By including the T1015 procedure code in its request for reimbursement, the FQHC is telling HCA that the service is reimbursable at the encounter-level payment.

## II. CLAIMS.

Parker's Second Amended Complaint asserts claims with the following theories of liability:

### A. Behavioral NPI.

Parker alleges that Sea Mar is filing false claims for reimbursement for encounters involving treatment provided exclusively by a medical assistant under a physician assistant's NPI number and taxonomy code. Plaintiff says that medical assistants cannot bill Medicaid for behavioral health treatments.

**B. Dental NPI.**

Parker alleges that Sea Mar is filing false claims for reimbursement and creating false documents pertaining to dental treatment provided exclusively by dental hygienists under a dentist's NPI number under taxonomy code.

**C. Unbundling.**

Parker claims that Sea Mar is unlawfully engaged in a practice by which dental hygienist services are delivered on one day and the dentist's services are delivered on a separate day, thereby allowing Sea Mar to bill for two encounters as opposed to just one.

**D. Standard of Care.**

Parker alleges that the unbundling of dentist and dental hygienist services is "below the standard of care in Washington for a healthcare provider providing dental services" and that the practice "is a burdensome waste of time" for Sea Mar's dental patients.

**E. Conspiracy.**

Parker also asserts a conspiracy claim, alleging that "[i]n order to acquire Medicaid funds, the defendant, its employees and its affiliated entities acted individually and/or conspired together and engaged in fraudulent activity contrary" to the FCA. Parker does not allege that Sea Mar has any affiliated entities and does not assert any facts suggesting that a third party was complicit in, or conspired with, the alleged fraud.

## III. LEGAL STANDARDS.

**A. The False Claims Act.**

"A civil action for False Claims Act liability requires four essential elements: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Modglin v. DJO Global, Inc.*, 48 F. Supp. 3d 1362, 1386 (C.D. Cal. 2014) (internal quotation marks and

citation omitted); *see also Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047-48 (9th Cir. 2012).

**B. Pleading Standards.**

1. Rule 12(b)(6)

Rule 12(b)(6) exists to weed out undeserving complaints. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

2. Rule 8

Pursuant to Rule 8, a complaint is subject to dismissal for failure to state a claim under Rule 12(b)(6) if the factual allegations do not show a plausible claim for relief. *Twombly*, 550 U.S. at 556. A plaintiff must sufficiently establish the "grounds of his entitlement to relief," by offering "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555 (internal quotation marks and citations omitted). While a court must accept all material ***facts*** as true, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.). Similarly, this Court is not required to accept as true any allegations that are contradicted by matters that are subject to judicial notice, that are exhibits to a complaint, or that are incorporated by reference in a complaint. *See, e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citing cases).

3. Rule 9(b)

Claims asserting violations of the FCA must also satisfy Rule 9(b)'s heightened pleading standard. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rule 9(b) "protect[s] defendants from the harm that comes from being subject to fraud charges," and "prohibit[s] plaintiffs from unilaterally imposing upon the court, the parties and societies enormous social and economic costs absent some factual basis," by "deter[ing] the filing of complaints as a pretext for the discovery of unknown wrongs[.]" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation omitted). Accordingly, general allegations of fraudulent conduct are insufficient to state an FCA claim under Rule 9(b). *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001). Instead, Plaintiffs must plead facts with particularity, setting forth the "'who, what, when, where and how'" of the fraud. *Cafasso*, 637 F.3d at 1055. (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). "[A] plaintiff must specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false." *Modglin*, 48 F. Supp. 3d at 1388; *accord Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## IV. ANALYSIS

**A. Parker's Allegations Are Not Plausible and Lack Sufficient Factual Support**

Parker's entire complaint is based on four sets of conclusory and legally insufficient allegations that fail to satisfy both Rule 8's lenient pleading requirements, and Rule 9(b)'s more stringent ones.

1. Behavioral NPI Allegations

Parker's Behavioral NPI Allegation fails to satisfy Rule 8's requirements. He offers ***no factual support whatsoever*** for his allegation that Sea Mar is improperly billing Medicaid for behavioral-health services provided by medical assistants other than the conclusory allegation itself.

Parker's Behavioral NPI Allegation is similar to the allegations found inadequate in *United States ex rel. Cook v. Providence Health & Services*. No. C13-1312RAJ, 2014 WL 4094116, at *10 (W.D. Wash. Aug. 18, 2014) (Jones, J.). In that case, Judge Jones dismissed an FCA relator's claims that a defendant had deprived the government of subrogation payments, citing a lack of compliance with Rule 8. *Id.* The court rejected as "cursory" allegations that the defendant in that case did not "properly account and refund" payments to Medicare or Medicaid when obtaining payments from third parties for patient care. *Id*. The Court dismissed the *Cook* relator's complaint because his allegations "fail[ed] to plausibly state a claim." The court explained where relator went wrong, and what Rule 8 called for:

> [relator did] not describe a single instance of [defendant] withholding a subrogation payment from the federal government [, did] not cite any statute, rule, or regulation that describes [defendant's] obligation to make subrogation payments to the federal government, [and] offer[ed] no allegations at all that would permit the inference that [defendant] withheld subrogation payments with scienter.

*Id.*

Parker's complaint suffers from the same deficiency and suffers the same fate as *Cook*. This claim is **DISMISSED** without prejudice.

2. Dental NPI Allegation

**No False Representation.** Parker fails to allege any false representation Sea Mar made in submitting the reimbursement claim. Parker relies on his allegation that Sea Mar submitted the claim for reimbursement of services provided by a dental hygienist under the supervising dentist's NPI number to show falsity. However, he fails to cite any statute, rule, or regulation that prohibits the submission of a claim for reimbursement for services performed by a dental hygienist under a dentist's supervision using the relevant dentist's NPI number and taxonomy code. Indeed, the HCA's Billing Guidelines do not prohibit billing an encounter under a supervising dentist's NPI and taxonomy code. The Billing Guidelines simply provide that when a dental hygienist provides a service jointly with a dentist—i.e., under the dentist's supervision—only one encounter should be billed, and that the dental hygienist should not also bill an encounter. April 2017 FQHC Billing Guide, at 30.

The more plausible inference from these facts is that a dental hygienist performed the service in question under either "general" or "close" supervision of a dentist. Parker's inference that the representation is false because a dentist was not involved in L.C.'s care is insufficiently supported. A dental hygienist may perform many encounter-eligible dental services as long as such services are performed under the "general supervision" or "close supervision" of a dentist. See WAC 246-817-550; WAC 246-817-560. The dentist's alleged physical absence from L.C.'s treatment is immaterial because "'[g]eneral supervision' . . . does not require that the dentist be physically present in the treatment facility" and "[c]lose supervision . . . does not require a

supervising dentist to be physically present in the operatory." WAC 246-817-510(1), (5).

Parker's allegation that the dental hygienist treating his granddaughter "was not supervised in any way by Dr. Yugil," SAC §XV, is purely speculative and does not save his claim. The allegation is not only conclusory, but it is contradicted by the very Sea Mar policy Parker references, and an unreasonable inference that should be ignored. *See Sprewell*, 266 F.3d at 988. Because neither general nor close supervision requires a dentist to be in the room with the patient, Parker cannot know that a dentist did not supervise the dental hygienist providing care to his granddaughter simply because he did not observe a dentist in the room with her. *See United States v. United Parcel Serv., Inc.*, No. CV 08-7284-GW(CTX), 2015 WL 13648581, at *5 (C.D. Cal. July 2, 2015), *aff'd sub nom. United States ex rel. DeFatta v. United Parcel Serv., Inc.*, 771 F. App'x 735 (9th Cir. 2019) The more plausible inference from these allegations that a dentist's name or code appeared on the "Explanation of Benefits" form is that this dentist was providing supervision for that treatment.

**No Scienter.** Given the Billing Guidelines, even assuming it was improper to bill under a supervising dentist's NPI and taxonomy code, Parker has not alleged scienter or any facts suggesting Sea Mar's actions were anything more than innocent mistakes. *See United States v. Zatica*, 244 F. App'x 799, 801 (9th Cir. 2007) (where applicable provision ambiguous and defendant adopted a reasonable interpretation of the provision promises of compliance with the provision could not have been made with requisite scienter for false claim); *Cook*, 2014 WL 4094116, at *120 ("Innocent or unintentional violations do not lead to False Claims Act liability, and dismissing FAC claim because "it is implausible to conclude that Providence acted with any mental state more culpable than negligence when it made mistakes") (citation omitted). This is especially so because the encounter fee Sea Mar receives is the same, regardless of whether a

dentist's NPI number or a dental Hygienist's NPI number is used. *See* April 2017 FQHC Billing Guide, at 33. Parker has not alleged a plausible motive for Sea Mar to knowingly submit false NPI numbers for dental care.

**No Materiality.** Parker fails to offer any support for his conclusory allegation that the use of a dentist's NPI number to bill for services provided by a dental Hygienist were material to the government's decision to pay Sea Mar's bills, especially since such use has no impact on the encounter rate the government pays.

This claim is **DISMISSED** without prejudice.

3. Unbundling Allegation

**No False Representation.** Parker relies on WAC 182-548-1450 to argue that a dental hygienist's services are incidental to a dentist's services and, as a result, are not independently encounter-eligible. Thus, Parker alleges that billing a dental hygienist's service as encounter-eligible is false. The argument is both contrary to the definition of a dental encounter, and misplaced. The FQHC Billing Guide expressly includes services provided by dental hygienists within its definition of a dental encounter. April 2017 FQHC Billing Guide, at 30 ("A dental encounter is a face-to-face encounter between a dentist, ***dental hygienist***, or orthodontist and a client for the purpose of prevention, assessment, or treatment of a dental problem….") (emphasis added). It thus cannot be disputed that dental hygienist services for the prevention, assessment, or treatment of a dental problem—such as a prophylaxis cleaning—may be independently encounter-eligible.

The crux of Parker's "Unbundling Allegation" takes issue with whether certain dental services ***must*** be bundled together. For example, if a dentist diagnosed a patient and formed a plan of treatment on Day 1, and then personally performed a cleaning pursuant to that treatment plan on Day 7, this would total two encounters. If instead the dentist

diagnosed a patient and formed a plan of treatment on Day 1, and then supervised a dental hygienist performing the cleaning on Day 7, there would still be two encounters. Parker's Unbundling Allegation essentially amounts to an argument that Sea Mar should have delivered all these services on the same day, to total one encounter. But nothing in the statutes or regulations or Billing Guides generally requires the treatment or prevention of a dental problem (such as a cleaning) occur during the same visit as the administration of radiographs and a dentist's examination.

Quite the contrary, the FQHC Billing Guide makes clear which services must be billed together and when; similarly, it provides clearly when a service should be billed separately as fee-for-service. For example, the FQHC Billing Guide expressly provides that certain incidental services and supplies (e.g., "professional component of an x-ray or lab, tongue depressors, etc.") are included in the encounter rate and are not paid separately. April 2017 FQHC Billing Guide, at 22-23. In addition, certain services, such as "blood draws, laboratory tests, x-rays, and prescriptions" are not encounter-eligible, but are reimbursed on a fee-for-service basis, even if provided on a different day from an encounter-eligible service. *See id.* at 27. Also, specific to dental services, if fluoride treatments and sealants are provided on the same day as an encounter-eligible service, they are billed on the same claim; if they are provided on a separate day, they may be billed as a fee-for-service reimbursement. *Id.* at 30. Parker does not allege that Sea Mar has run afoul of these regulations and thus fails to support his allegation that Sea Mar has improperly unbundled services that must be billed together.

**No Scienter.** Parker's Unbundling Allegation fails to plausibly allege scienter. He offers no allegation that would permit the inference that Sea Mar submitted such claims with scienter, *i.e.* knowingly in contravention of Medicaid rules (if indeed such claims violate Medicaid rules).

For the reasons discussed above, if WAC 182-548-1450 prohibits the "unbundling" conduct alleged, it is, at best, ambiguous with respect to that conduct. And Parker has failed to plausibly allege that Sea Mar's interpretation of that regulation is unreasonable. *See Zatica*, 244 F. App'x at 801; *Krawitt*, 372 F. Supp. 3d at 1090.

**No Materiality.** Finally, Parker has failed to plausibly allege materiality. Because Sea Mar is required to provide procedure codes for the services provided during each encounter in its bills (and there is no allegation that Sea Mar has failed to do so appropriately), the Court may assume that it is plain from the face of Sea Mar's bills to Medicaid that L.C.'s prophylaxis treatment and the dentist's examination and administration and interpretation of radiographs were provided on different days. If the government had a problem with such "unbundling," it presumably would not have paid Sea Mar's bill. There is no allegation the government did not pay Sea Mar's bills for services rendered to L.C. or any other facts plead that would support a conclusion that such "unbundling" is material to the government's decision to pay.

**Rule 9(b).** Parker's Unbundling Allegation also fails to satisfy Rule 9(b). Other than the single example involving L.C., Parker fails to set forth the "'who, what, when, where and how'" of the alleged fraud, and thus fails to even minimally satisfy Rule 9(b). *See Cafasso*, 637 F.3d at 1055 (citation omitted). Other than a single example involving L.C., receiving "unbundled" care from Sea Mar, Parker provides no specific allegations that Sea Mar improperly "unbundled" claims with respect to any other patient or at any other facility. *See United States ex rel. Jorgenson v. Alan Ritchey, Inc.*, No. C01-588Z, 2007 WL 1287932, at *3 (W.D. Wash. Apr. 27, 2007) (while finding specifics sufficiently plead for one location, dismissing allegations related to defendant's other locations unsupported by specific allegations of fraud because "alleged fraudulent activity at one [location] does not constitute an allegation for a different [location]").

Parker points to no policy requiring that dental care be unbundled." He does not identify the dental hygienists or billing staff that were involved in the alleged fraud; nor (beyond the single example involving L.C.), does he provide any dates, times, or places the relevant treatments were provided. Moreover, he does not provide any date as to when any fraudulent claims were submitted, how they were submitted, or even if they were submitted. Like in *Lee*, Parker's claims are not nearly "specific enough to give [Sea Mar] notice of the articular misconduct which is alleged to constitute the fraud charged so that [it] can defend itself. Parker's Unbundling Allegation is **DISMISSED** without prejudice for failure to satisfy Rule 8 and Rule 9(b).

4. <u>Standard of Care Allegation</u>

Parker's allegations that the alleged unbundling of dentist diagnoses and dental hygienist services "is below the standard of care" must also be dismissed. Such allegations simply do not state a claim under the FCA. Courts have repeatedly concluded that "billing for medical services that do not meet the standard of care does not give rise to a [sic] FCA violation" because the FCA "is an inappropriate vehicle for policing quality of care, which is better left to local regulation and enforcement." *See United States ex rel. Lockyer v. Hawaii Pac. Health*, 490 F. Supp. 2d 1062, 1076 (D. Haw. 2007), *aff'd in part sub nom. United States ex rel. Lockyer v. Hawaii Pac. Health Grp. Plan for Emps. of Hawaii Pac. Health*, 343 F. App'x 279 (9th Cir. 2009); *see also United States ex rel. Dooley v. Metic Transplantation Lab, Inc.*, No. CV 13-07039 SJO (JEMx), 2017 WL 4323142, at *26 (C.D. Cal. June 27, 2017) ("tests that allegedly did not comply with a particular standard of care does not amount to a 'fraudulent scheme' actionable under the FCA.") (citation omitted). Likewise, "an allegation of inefficiency does not state a claim under the FCA." *Dooley*, 2017 WL 4323142, at *25 (quoting *United States v. Rockwell Space Operations Co.*, No. CIV.A.H.- 96-3626, 2002 WL 864246, at *11 (S.D. Tex. Apr. 3, 2002)). Parker's standard of care allegation is **DISMISSED** without prejudice.

**B. CONSPIRACY ALLEGATION**

Parker's complaint includes an allegation that "the defendant, its employees and its affiliated entities acted individually and/or conspired together and engaged in fraudulent activity contrary to . . . 31 U.S.C. § 3729(a)(1)(c)," which prohibits conspiring to commit a violation of the FCA. This conspiracy allegation fails to meet even the "bare-bones" test of legal sufficiency.

To allege an FCA conspiracy claim, a plaintiff must allege (1) that the defendant knowingly conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) that one or more of the conspirators performed any act to effect the object of the conspiracy. *Sweeney v. ManorCare Health Servs., Inc.*, No. C03- 5320RJB, 2005 WL 4030950, at *6 (W.D. Wash. Mar. 4, 2005). Parker does not allege that Sea Mar has any affiliated entities, let alone that any entity outside of Sea Mar was involved in its billing of Medicaid. *See id*. at *7 (dismissing FCA conspiracy claim where relator "d[id] not indicate that she believes anyone outside ManorCare was involved in billing"). Sea Mar cannot conspire with itself. *See Schmitz v. Mars, Inc*., 261 F. Supp. 2d 1226, 1234-35 (D. Or. 2003) ("The intra-corporate conspiracy doctrine provides a corporation cannot conspire with its own employees or

//

//

//

//

agents as a matter of law.”). Thus, Plaintiff’s conspiracy claim is not plausible and is **DISMISSED** without prejudice.

The Court will permit Parker one last chance to amend his complaint to assert a plausible claim, supported by factual allegations, on the claims that were dismissed without prejudice. If he does not do so within 30 days, the case will be dismissed.

IT IS SO ORDERED.

Dated this 28th day of April, 2020.

Ronald B. Leighton
United States District Judge